IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

HEATHER HOGROBROOKS HARRIS,    )
                               )
     Plaintiff,                )
                               )
v.                             )        No. 21-cv-2558-JTF-tmp
                               )
WELLS FARGO BANK, N.A. and     )
WILSON & ASSOCIATES PLLC,      )
                               )
     Defendants.               )
_____

REPORT AND RECOMMENDATION
_____

        Before the court is a Motion to Dismiss and supporting
memorandum filed on October 28, 2021, by defendant Wells Fargo
Bank, N.A. ("Wells Fargo") pursuant to Federal Rule of Civil
Procedure 12(b)(6).[1] (ECF No. 28 & 29.) *Pro se* plaintiff Heather
Hogrobrooks Harris filed three documents in response: "Plaintiff's
Sworn Answer to Defendant Wells Fargo Claims that She Fails to
State Causes of Action for Which Relief Can Be Granted,"
"Plaintiff's [sic] to Defendant Wells Fargo Claims That Her Claims
are Barred by the Statute of Limitations," and "Plaintiff's Brief

_____

[1]Pursuant to Administrative Order No. 2013-05, this case has been
referred to the United States magistrate judge for management and
for all pretrial matters for determination or report and
recommendation, as appropriate.

in Opposition Reply to Defendant Wells Fargo Claims That Her Claims
are Barred By the Statute of Limitations."[2] (ECF Nos. 33-35.) Wells
Fargo filed a reply on November 19, 2021. (ECF No. 36.) Harris
filed a sur-reply on December 20, 2021. (ECF Nos. 37 & 38.)

For the reasons below, it is recommended that the Motion to
Dismiss be granted.

## I.    PROPOSED FINDINGS OF FACT

A prior federal court proceeding is relevant to the present
action. On June 11, 2018, Harris filed a *pro se* complaint in this
court against defendant Wells Fargo, alleging violations of 42
U.S.C. §§ 1981, 1982, and 1985(3), as well as bringing state law
claims for "Breach of an Unconscionable Contract," detrimental
reliance, fraudulent misrepresentation, and violations of
Tennessee consumer protection statutes. Harris v. Wells Fargo
Bank, N.A., No. 18-2400-JPM-dkv, 2019 WL 3080764, at *1 (W.D. Tenn.
Mar. 18, 2019). In her report and recommendation for *sua sponte*
dismissal, United States Magistrate Judge Diane K. Vescovo
summarized the underlying facts as follows:

This case arises out of Harris's attempts to assume

---

[2]In their reply, Wells Fargo argues that because Harris failed to
seek leave of court in filing these briefs that appear to be sur-
replies, the court should disregard these briefs. (ECF No. 36 at
2.) Although the undersigned acknowledges that these briefs were
filed in violation of Local Rule 7.2, for purposes of completeness,
the undersigned will consider these filings in deciding the instant
motion.

the mortgage of her late husband, Jimmy D. Harris,
following his death in March of 2015, and to obtain a
mortgage modification from Wells Fargo. The late Mr.
Harris was the sole mortgagor and owner of the property
at issue–579 Byron Drive Memphis, Tennessee 38109. In
2005, when Mr. Harris took out a mortgage on the
property, the appraised property value was $120,000.
Mr. Harris's 2005 mortgage loan was approximately
$98,000. The most recent appraisal of the property, done
in 2018 by the County Assessor, values the property at
$90,000. As of the time of the filing of this suit, the
balance due on the mortgage was approximately $48,000.

In 2013, Mr. Harris was diagnosed with lung cancer.
Harris alleges that she contacted Wells Fargo on her
husband's behalf in September 2014, in order to obtain
an application to participate in the Home Affordable
Modification Program ("HAMP") in an attempt to lower the
mortgage payments due to her husband's failing health.
Harris alleges that Wells Fargo agreed to send a HAMP
application. On October 26, 2014, Mr. Harris mailed
Wells Fargo a power of attorney document, which
allowed Harris to discuss the mortgage and execute
documents on his behalf. Harris claims that throughout
December 2014, she made four or five calls to Wells
Fargo, but never received a refinancing packet.

Mr. Harris died on March 10, 2015. From what the
court can glean from the complaint, Mr. Harris had a
will which left the real property to Harris. In lieu of
probating the will, on May 19, 2015, Harris recorded an
Affidavit of Heirship with the Register of Deeds "to
have her inherited property officially registered and
placed in her name."

Harris continued to pay Mr. Harris's mortgage from
his death through June of 2015, but she claims she "could
not continue as her reserve resources had dwindled
significantly. . . ." Harris alleges that during the
first three months after Mr. Harris's death, she
requested copies of all mortgage documents, but did not
receive all requested documents, and that she requested
HAMP applications. She claims that she sent Wells Fargo

copies of her marriage license, Mr. Harris's death
certificate, and her Affidavit of Heirship, asking that
Wells Fargo send her documents regarding the mortgage.
Harris claims to have dealt with fifteen or more
employees of Wells Fargo in trying to modify the mortgage
on the property.

In October 2015, Harris received a notice of
foreclosure. Harris alleges that after contacting the
foreclosure firm listed on the notice, she finally
received her first HAMP application, which "she promptly
filled out and returned." In December 2015,
however, Harris received a second notice of foreclosure.
Harris alleges that a Wells Fargo representative
informed her that the Affidavit of Heirship was
insufficient to vest her with a property interest in
Mr. Harris's property. The Wells Fargo representative
purportedly informed Harris that the "only way she could
stop the foreclosure sale" was to open an estate in
probate court and submit Mr. Harris's will to probate
and provide Wells Fargo with letters testamentary, "at
which time they would modify the loan." Harris opened an
estate in probate court but the probate court refused to
admit the will to probate. An appeal of the probate
court's ruling was pending before the Tennessee Court of
Appeals at the time Harris filed this lawsuit.

Upon filing the will for probate, Harris was named
the administrator of Mr. Harris's estate, and provided
letters testamentary, which she sent to Wells
Fargo. Harris received another foreclosure notice.
Harris, "absolutely devastated by [Wells Fargo]
scheduling another foreclosure sale," withdrew as the
administrator of the estate and appealed the probate
court's decision denying probate of the will. She
alleges that Wells Fargo continued sending notices of
foreclosure to Harris's address, despite "[knowing] the
name and addresses of the attorney and the two other
people mentioned in the will," and has still continued
sending mail to Harris as the representative of the
estate "even though [Harris] has not held that title

since June of 2016 and [Wells Fargo] knows there is and
has been no Estate representative since."

Thereafter, Harris sent   in    another    HAMP
application, but received notices back from Wells Fargo
stating   that   she   was   missing   documents.   Harris
purportedly responded to those notifications, sending in
the proper documents, but still received another notice
of foreclosure. In January of 2017, Harris  filed for
bankruptcy, which she claims was because Wells Fargo
refused to allow her to modify Mr.  Harris's mortgage.

Harris further alleges that in April of 2017 Wells
Fargo allowed her to make "trial payments" totaling
roughly 40% of her monthly income. Although she paid
these trial payments from May of 2017 through February
2018, Harris claims that Wells Fargo then called to
inform her that she could not assume the loan until the
probate matter was closed. Wells Fargo purportedly
returned   all   but   one   of   her   trial   payments
and Harris believes Wells Fargo wrongfully failed to pay
her interest for the payments it held.

Harris alleges that she repeatedly – "about five
times starting in November 2017" – returned the
documents requested by Wells Fargo, but Wells Fargo
"will not explain[] why [it] won't accept the document
sent in compliance with their request and conformity
with its form." Harris, "simply spent at this point,"
filed a complaint with the Consumer Financial Protection
Bureau on December 27, 2017. After Wells Fargo responded
to Harris's Consumer   Financial   Protection   Bureau
complaint, Harris asserts that she received a "Notice of
Action Taken and Statement of Reasons" informing her
that the assumption could not be granted because the
loan was not assumable "without any explanation of
why[.]" Harris surmises that this rejection "[was] for
retaliation," and "to cover up" Wells Fargo's unjust
treatment of Harris, and to "unjustly enrich itself with
the equity in the property."

On January 18, 2018, Harris alleges that she
received a call from a Wells Fargo representative, who
informed her that the mortgage modification could not be
completed because Harris "did not have a vested interest
in the property . . . until [the court entered] an order
closing the probate and an order from that court
proclaiming [Harris] as the sole owner of the property"
because there were two other heirs mentioned in the will,
and apparently, Wells Fargo had reservations as to the
true owner of the property.

Harris believes that Wells Fargo engaged in
discriminatory lending practices by imposing
requirements upon her for which "it will not offer her
a reason[,] and which cannot be discerned from the
documents it sends or program rules available to [her]."
She also asserts that, at the time the 2005 mortgage was
entered into, Mr. Harris received "less favorable terms
that his then credit rating, income[,] and full VA
eligibility should have earned because of Wells Fargo's
race based lending practices."

Id. at *1-3 (internal citations omitted).

On March 18, 2019, Judge Vescovo entered her Report and
Recommendation, which recommended that Harris's complaint be
dismissed *sua sponte* in its entirety for lack of standing. Id. at
*16. Additionally, Judge Vescovo recommended that the breach of
contract claim be dismissed because it was barred by the statute
of frauds. Id. at *11. Harris filed an objection to the Report and
Recommendation, arguing that she had standing to bring her claims
under the Garn-St. Germain Act of 1982, 12 U.S.C. § 1701j-3(d)(3).
Id., (ECF No. 69 at 2.)

United States District Judge Jon P. McCalla adopted Judge Vescovo's proposed conclusion that Harris lacked standing to assert claims arising from her late husband's mortgage, but additionally found that "Harris lacks standing to assert claims arising before her Chapter 7 bankruptcy proceeding," which began in January 2017. <u>Harris v. Wells Fargo Bank, N.A.,</u> No. 18-2400-JPM-dkv, 2019 WL 2319529, at *1 (W.D. Tenn. May 31, 2019)(hereinafter <u>Harris I</u>). The court overruled Harris's objection that the Garn-St. Germain Act confers standing, stating "[t]he Act prevents Wells Fargo from using Mr. Harris's death, by itself, as the basis for making the entire loan balance due. It does not, however, transfer the rights in the property to Harris or release her husband's estate's obligations to continue making loan payments."[3] <u>Id.</u> at *4. The court found that Harris's detrimental reliance and fraudulent misrepresentation claims arose when Harris filed her probate petition on December 16, 2015, and that Harris's claim for violation of Tennessee consumer protection statutes arose before the filing of her bankruptcy petition. <u>Id.</u> at 7. Judge Vescovo's finding that Harris's breach of contract claim was barred by the statute of frauds was also adopted. <u>Id.</u> at

---

[3]Harris argues vaguely in the present case that she has "been deprived of receiving the benefit of Gran-St. [sic.] Germain Depository Institutions Act." (ECF No. 1 at 1.) However, this issue was resolved in <u>Harris I</u> and Harris provides no grounds for this court to revisit her prior objection in the instant suit.

1. The court dismissed the complaint in its entirety and certified that an appeal would not be taken in good faith. Id.

On September 6, 2019, the probate court's decision was reversed, and Mr. Harris's will was admitted into probate. In re Harris, No. PR-5044 (Shelby Cty. Prob. Ct. Sept. 6, 2019). On June 9, 2020, the Sixth Circuit Court of Appeals affirmed the district court's decision in Harris I. Harris v. Wells Fargo Bank, N.A., No. 19-5609, 2020 WL 7231501, at *4 (6th Cir. Jun. 9, 2020)(hereinafter Harris II). Regarding Harris's Section 1985(3) claim, the Sixth Circuit wrote:

> The district court found that Hogrobrooks lacked standing to bring the claim in part because "she had no legal right [in the property] that would have been affected by [the foreclosure]." The will has since been admitted into probate. . . . However, even if Hogrobrooks has demonstrated standing by pleading a sufficient injury in the potential loss of her inherited property, she has failed to state a plausible claim under § 1985(3).

> In order to establish a claim for conspiracy under § 1985(3), a plaintiff must plead and prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005) (quoting Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir. 2003)).

>    Hogrobrooks, however, failed to plead a conspiracy,
> and Wells Fargo cannot conspire with itself or its own
> employees. <u>See</u> <u>Amadasu v. Christ Hosp.</u>, 514 F.3d 504,
> 507 (6th Cir. 2008); <u>Doherty v. Am. Motors Corp.</u>, 728
> F.2d 334, 339 (6th Cir. 1984).

<u>Harris II</u>, 2020 WL 7231501, at *2. Regarding the §§ 1981 and

1982 claims, the Sixth Circuit wrote:

>    The district court based its denial of
> Hogrobrooks's §§ 1981 and 1982 claims for lack of
> standing on the facts that her husband died intestate
> and that there had been no legal determination that she
> inherited the property. As discussed in the previous
> section, the will has since been admitted to probate. .
> . . However, she nonetheless fails to state a claim upon
> which relief can be granted.

>    Section 1981 "prohibits intentional race
> discrimination in the making and enforcing of
> contracts." <u>Amini v. Oberlin Coll.</u>, 440 F.3d 350, 358
> (6th Cir. 2006). "Section 1982 prohibits racial
> discrimination relating to certain interests in real or
> personal property." <u>Moniz v. Cox</u>, 512 F. App'x 495, 501
> (6th Cir. 2013). Both statutes require that the
> plaintiff plead racial animus. <u>Id.</u> But Hogrobrooks has
> failed to plead a class-based discriminatory animus
> claim. In her § 1981 claim, she asked: "Is it a black
> thing; [is] it a white thing; is it just arbitrary
> conduct by defendant?" And in her § 1982 claim, she
> asked: "Is it the Plaintiff's race and the value of her
> property as it was when this law was enacted?" These
> speculations are insufficient to plead facts
> demonstrating a class-based discriminatory animus.

>    Her allegations in her statement of facts
> concerning racial animus are speculative and conclusory,
> because she relies on "public knowledge" that Wells
> Fargo engages in racially discriminatory practices and
> that "it is very plausible and reasonable that [Wells
> Fargo] is continuing its discriminatory practices in the

Case 2:21-cv-02558-JTF-tmp    Document 42    Filed 05/03/22    Page 10 of 40
PageID 228

> same areas." Her vague allegations that her husband
> received less favorable terms on the mortgage than he
> should have in 2005 do not demonstrate that
> Wells Fargo acted with discriminatory animus a decade
> later by not allowing her to assume the mortgage or by
> failing to recognize the documents that she presented as
> evidence that she had inherited the property.

Id. at *3. The Sixth Circuit also held that "[t]he district court
. . . correctly found that Hogrobrooks's bankruptcy estate was the
only entity that had standing to bring any claims that she may
have had on January 12, 2017, see Tyler v. DH Capital Mgmt., Inc.,
736 F.3d 455, 461 (6th Cir. 2013), and that her detrimental-
reliance, fraudulent-misrepresentation, and Tennessee Consumer
Protection Act claims all arose prior to that date." Harris II,
2020 WL 7231501, at *3. Finally, the Sixth Circuit affirmed the
district court's finding that Harris's breach of contract claim
was barred by the statute of frauds. Id.

Harris filed the *pro se* complaint in the present case and a
motion to proceed *in forma pauperis* on August 31, 2021. (ECF Nos.
1 & 2.) The court granted the motion to proceed *in forma pauperis*
on September 1, 2021. (ECF No. 6.) On September 30, 2021, the
undersigned entered an order directing the Clerk's office to issue
service of process. (ECF No. 9.) The Clerk's office issued summons
on October 1, 2021, and on October 22, 2021, the summons was
returned executed. (ECF Nos. 10, 19, 20.)

Harris brings suit against Wells Fargo and debt collector

- 10 -

Wilson & Associates, PLLC ("Wilson"), alleging claims under 42 U.S.C. §§ 1981, 1982, and 1985(3), as well as state law claims for intentional infliction of emotional distress ("IIED"), "Misuse, Abuse, and Malicious Prosecution," fraud, "Breach of an Unconscionable Contract," detrimental reliance, fraudulent misrepresentation, and violations of Tennessee Consumer Protections Act ("TCPA"). (ECF No. 1 at 16-22.) The underlying facts in the present complaint are largely identical to those in Harris's 2018 complaint. See Harris I, 2019 WL 2319529, at *1-3; (ECF No. 1.)

Since the Sixth Circuit's decision in Harris II, Harris has received another notice of foreclosure dated August 5, 2021. (Id. at 9.) This notice was in Harris's husband's name "although he has been deceased since March 10, 2015." (Id.) The debt due on the property has now increased to $130,000. (Id. at 10.) Additionally, an administrator was appointed to Mr. Harris's estate on September 5, 2019. (Id. at 13.) Mr. Harris's estate was closed on May 12, 2020. (Id.) "To Plaintiff's knowledge, the defendant did not make any claims before closure but continue to mail notices to Plaintiff's home in the name of the Estate of Jimmy D. Harris." (Id.) On June 18, 2021, the Chapter 7 Trustee in Harris's bankruptcy case filed a Notice of Proposed Abandonment of Property of the Estate. In re Heather Patrice Hogrobrooks Harris, No. 2:17-

bk-20334 (Bankr. W.D. Tenn., Jan. 12, 2017), (ECF No. 126). On
July 17, 2021, the court entered an order accepting the
abandonment. Id. (ECF No. 130.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the court
views the allegations in the light most favorable to the plaintiff
and accepts all well-pleaded factual allegations as true. Ashcroft
v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil
Procedure 8(a)(2) requires only "a short and plain statement of
the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual
allegations in the complaint need to be sufficient to give notice
to the defendant as to what claims are alleged, and the plaintiff
must plead 'sufficient factual matter' to render the legal claim
plausible, i.e., more than merely possible." Fritz v. Charter Twp.
of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556
U.S. at 677). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 556
U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557
(2007)). To satisfy this requirement, plaintiffs must plead more
than "labels and conclusions," "a formulaic recitation of the
elements of a cause of action," or "naked assertions devoid of

further factual enhancement." Id. (alteration omitted)
(quoting Twombly, 550 U.S. at 555, 557). "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id.

Pro se complaints are held to less stringent standards than
formal pleadings drafted by lawyers and are thus liberally
construed. Williams v. Thomas, No. 16-1330, 2019 WL 1905166, at *1
(W.D. Tenn. Apr. 29, 2019); Williams v. Curtin, 631 F.3d 380, 383
(6th Cir. 2011). Even so, pro so litigants must adhere to the
Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d
591, 594 (6th Cir. 1989), and the court cannot create a claim that
has not been spelled out in a pleading. See Brown v. Matauszak,
415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas.,
73 F. App'x 836, 837 (6th Cir. 2003).

**B.  *Res Judicata***

Wells Fargo argues that Harris's federal claims — violations
of 42 U.S.C. §§ 1981, 1982, and 1985(3) — as well as her state
breach of contract claim must be dismissed on res judicata grounds
because the same causes of action were dismissed in her prior
lawsuit by this court and that decision was affirmed by the Sixth
Circuit. Harris I, 2019 WL 2319529, at *1, aff'd, 2020 WL 7231501,
at *4. Harris does not address this argument in any of her

responses.

The doctrine of *res judicata*, also known as claim preclusion, bars subsequent claims by parties or their privies based on the same cause of action. See Jones v. Memphis Police Dep't, No. 13-2066-JDT-tmp, 2013 WL 5516733, at *1 (W.D. Tenn. Oct. 1, 2013); Trent v. Shelby Cty. Gov't, No. 2:08-cv-2797-JPM-cgc, 2009 WL 6066974, at *1 (W.D. Tenn. Jul. 30, 2009). To the extent this case involves successive federal claims, federal *res judicata* principles apply. Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc., 805 F.3d 701, 709 (6th Cir. 2015). The following four-part test is used to determine whether a subsequent action is barred by the doctrine of *res judicata*:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Id. at 709 (quoting Kane v. Magna Mixer Co., 71 F.3d 555, 560 (6th Cir. 1995)). In affirming dismissal of Harris I, the Sixth Circuit held that Harris failed to state a claim for relief under 42 U.S.C. §§ 1981, 1982 and 1985(3). Harris II, 2020 WL 7231501, at *2. Specifically, the Sixth Circuit affirmed the dismissal of Harris's §§ 1981 and 1982 claims because Harris "failed to plead a class-based discriminatory animus claim." Id. The Sixth Circuit affirmed the dismissal of Harris's § 1983(5) claim because she "failed to

plead a conspiracy, and Wells Fargo cannot conspire with itself or its own employees." Id.

Because all four elements of *res judicata* are satisfied, Harris's federal claims must be dismissed. First, the Sixth Circuit had jurisdiction over Harris's appeal, and that court issued a decision on the merits. See Pratt v. Ventas, Inc., 365 F.3d 514, 522 (6th Cir. 2004) ("A 'dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits,' and is therefore done with prejudice.")(quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3, (1981)). Second, this is a subsequent action between Harris and Wells Fargo Bank. Third, the same issues were litigated in Harris I. Fourth, the causes of action are identical.

*Res judicata* also bars Harris's state breach of contract claim. "Where a prior decision comes from a federal court sitting in diversity, 'the federally prescribed rule of decision' is to apply the preclusion rules 'that would be applied by state courts in the State in which the federal diversity court sits,' except where the state preclusion rules are 'incompatible with federal interests.'" N.D. Management, Inc. v. Hawkins, 787 F. App'x 891, 896 (6th Cir. 2019) (quoting Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001)). "Tennessee preclusion law is compatible with federal interests (indeed, the respective

preclusion rules are the same)," therefore the undersigned applies
Tennessee preclusion law. In re Berge, 953 F.3d 907 (6th Cir.
2020). Tennessee courts have used the term "res judicata" to
include both claim preclusion (res judicata) and issue preclusion
(collateral estoppel). West v. Parker, 783 F. App'x 506, 512, n.
2 (6th Cir. 2019)(citing Regions Fin. Corp. v. Marsh USA, Inc.,
310 S.W.3d 382, 393 (Tenn. Ct. App. 2009)). Tennessee law requires
that the following four elements be established to
assert res judicata:

> (1) that the underlying judgment was rendered by a court
> of competent jurisdiction, (2) that the same parties or
> their privies were involved in both suits, (3) that the
> same claim or cause of action was asserted in both suits,
> and (4) that the underlying judgment was final and on
> the merits.

Jackson v. Smith, 387 S.W.3d 486, 491 (Tenn. 2012). In affirming
the dismissal of Harris I, the Sixth Circuit upheld the district
court's finding that Harris's breach of contract claim was barred
by the statute of frauds. Harris II, 2020 WL 7231501, at *3. For
the same reasons discussed above, because all four elements of res
judicata under Tennessee law are satisfied, Harris's breach of
contract claim must be dismissed. See Pedreira v. Sunrise
Children's Servs., Inc., 802 F.3d 865, 870 (6th Cir. 2015)("A
dismissal with prejudice 'operates as a final adjudication on the
merits and has a res judicata effect.'")(quoting Warfield v.
AlliedSignal TBS Holdings, Inc., 267 F.3d 538, 542 (6th Cir.

2001)). Accordingly, it is recommended that Harris's federal claims and her state law breach of contract claim be dismissed on *res judicata* grounds.

**C.   Harris's Remaining State Law Claims**

Although it is recommended that all of Harris's federal claims be dismissed, the undersigned finds that the court still has jurisdiction over Harris's remaining state law claims because the elements of diversity jurisdiction are met in this case. Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." Champluvier v. Simpson, No. 21-cv-2072-JPM-tmp, 2021 WL 1555098, at *3 (W.D. Tenn. Mar. 30, 2021)(quoting Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (internal citations omitted). Additionally, "[i]n the Sixth Circuit, it is generally agreed that the amount [in] controversy is determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" Fed. Nat'l Mortg. Ass'n v. Jaa, No. 14-2065-STA-dkv, 2014 WL 1910898, at *5 (W.D. Tenn. May 13, 2014) (quoting Williamson v. Aetna Life Ins. Co., 481 F.3d 369,

376–77 (6th Cir. 2007)).

Based on the record before the court, it appears that Harris is a citizen of Tennessee, Wells Fargo's principal place of business is in California, and Wilson's principal place of business is in Arkansas. (ECF No. 1 at 4-6.) Further, Harris alleges in her complaint that her estimated damages – including actual economic loss, pain and suffering, and punitive damages – total over $20,060,000, a sum that is well in excess of the statutory requirement. Therefore, the elements of diversity jurisdiction are met.

Harris once again brings state law claims alleging detrimental reliance, fraudulent misrepresentation, and violations of the TCPA. The Sixth Circuit held that "[t]he district court . . . correctly found that Hogrobrooks's bankruptcy estate was the only entity that had standing to bring any claims that she may have had on January 12, 2017, see Tyler, 736 F.3d at 461, and that her detrimental-reliance, fraudulent-misrepresentation, and Tennessee Consumer Protection Act claims all arose prior to that date." Harris II, 2020 WL 7231501, at *3.[4] However, in June 2021,

---

[4]"[A] dismissal for lack of standing is not an adjudication on the merits for the purposes of *res judicata*." Specialty Auto Parts USA, Inc. v. Holley Performance Prod., Inc., 771 F. App'x 584, 591 (6th Cir. 2019) (quoting Ohio ex rel. Boggs v. City of Cleveland, 655 F.3d 516, 521 (6th Cir. 2011)) (finding that *res judicata* did not bar litigation of claims that had previously been dismissed

the Chapter 7 trustee abandoned any such claims. <u>In re Harris</u>, No. 2:17-bk-20334, (ECF No. 126). When the trustee abandoned those claims, the property was returned to Harris, and thus it appears Harris now has standing to bring these claims. <u>See</u> 11 U.S.C. § 554 ("Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor. . ."). Harris also brings, for the first time, additional claims of IIED, "Misuse, Abuse, and Malicious Prosecution," and fraud. "A federal court sitting in diversity applies the law of the forum state[.]" <u>Madrid v. Annett Holdings, Inc.</u>, No. 1:21-cv-1173-STA-jay, 2022 WL 1005307, at *2 (W.D. Tenn. Apr. 4, 2022). Therefore, this court will apply Tennessee law in analyzing Harris's remaining state law claims.

      1.   <u>Detrimental Reliance</u>

     Detrimental reliance is also known as promissory estoppel. <u>Chavez v. Broadway Elec. Serv. Corp.</u>, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). Tennessee courts apply the definition of promissory estoppel found in the Restatement (Second) of Contracts to detrimental reliance claims: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite

---

for lack of standing).

- 19 -

and substantial character on the part of the promisee, and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting Restatement (Second) of Contracts § 90 (1981)). In Tennessee, the doctrine of promissory estoppel is not liberally applied. Barnes & Robinson Co., Inc. v. OneSource Facilities, Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App 2006). Because promissory estoppel is an equitable doctrine, its limits are "defined by equity and reason." Chavez, 245 S.W.3d at 404. In order to succeed on a claim for promissory estoppel, Harris must establish the following elements: "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that [she] reasonably relied upon the promise to [her] detriment." Id. (citations omitted).

Harris's detrimental reliance claim is based on a statement from a Wells Fargo employee that "the only way she would stop the foreclosure sale was if the Plaintiff would probate the mortgagor's will and receive a testamentary letter at which time they would modify the loan." (ECF No. 1 at 11.) After complying with Wells Fargo's instruction, Harris states, "[p]laintiff did not benefit from the Defendant's directive to probate husband's will after which it promise[d] modification but instead lost significant money and sleep." (ECF No. 1 at 12.) Wells Fargo argues that

Harris's detrimental reliance claim must be dismissed because detrimental reliance is not an exception to the Tennessee statute of frauds and Harris's allegations supporting the claim are unenforceably vague. (ECF No. 29 at 9.) Harris does not address these arguments in any of her responses.

The Tennessee statute of frauds prohibits oral promises of loan modifications. Harris II, 2020 WL 7231501, at *3 (citing Tenn. Code Ann. § 29-2-101(b)(1)). Further, as the Sixth Circuit stated in Harris II, "promissory estoppel is not an exception to the statute of frauds." Id. (citing Nationsbank, N.A. (S.) v. Millington Homes Inv'rs, Ltd., No. 02A01-9805-CH-00134, 1999 WL 79204, at *3 (Tenn. Ct. App. Feb. 19, 1999)). Because Harris's claim is based on an oral promise of a loan modification and detrimental reliance is not an exception to the statute of frauds, the undersigned recommends that Harris's detrimental reliance claim be dismissed.

    2.    Fraudulent Misrepresentation and Fraud[5]

---

[5]In her complaint, Harris alleges claims of fraud and fraudulent misrepresentation. (ECF No. 1 at 17, 21.) Both claims are addressed together because they are the same cause of action. Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC, 446 F. Supp. 3d 258, 275 (M.D. Tenn. 2020)(citing Hodge v. Craig, 382 S.W.3d 325, 342 (Tenn. 2012) ("The Tennessee courts consider 'fraud,' 'intentional misrepresentation,' and 'fraudulent misrepresentation' to be different names for the same cause of action.")).

Harris alleges that Wells Fargo committed fraudulent misrepresentation by leading her to believe that her late husband's mortgage was assumable and then later informing her that it was not. (ECF No. 1 at 21.) Harris asserts, "[i]t is absolutely inconceivable that the defendant did not know the mortgage loan was not assumable before its March 14, 2018 letter if indeed that is the truth." (Id.) Wells Fargo argues that plaintiff's fraud claim is time-barred and that the complaint fails to state a claim for relief. (ECF No. 29 at 14.) Harris argues that she is entitled to equitable tolling "due to defendant's extrinsic fraud" and that the continuing violations doctrine applies, although she does not identify which claims are subject to which doctrine. (ECF No. 34 at 2.) She does not address Wells Fargo's argument that she failed to state a claim in her responses.

In Tennessee, the statute of limitations for fraud claims is three years. Hulan v. Coffee Cty. Bank, No. M2018099358-COA-R3-CV, 2019 WL 354870, at *3 (Tenn. Ct. App. Jan. 28, 2019)(citing Tenn. Code Ann. § 28-3-105(1)). Wells Fargo argues that because the instant lawsuit was filed on August 21, 2021, more than three years after Wells Fargo informed Harris that she would not be able to assume her late husband's mortgage on March 14, 2018, Harris's claim is barred by the statute of limitations. Harris asserts that the earliest her claim could have accrued was in July 2018, after

the bankruptcy court granted her motion to lift the bankruptcy stay. (ECF No. 35 at 1.) In their reply, Wells Fargo states that Harris's argument that her claim accrued in July 2018 is contrary to the court's findings in Harris I, which established that Harris's fraudulent misrepresentation claim accrued on December 16, 2015. (ECF No. 36 at 9.) Regardless of whether the court uses the July 2018, March 14, 2018, or December 16, 2015 as the accrual date, her claims would still be time-barred because Harris's complaint was filed on August 31, 2021, which is outside the three-year statute of limitations. (ECF No. 1.)

Harris argues that the court should apply the doctrine of equitable tolling. The doctrine "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." Plummer v. Warren, 463 F. App'x 501, 504 (6th Cir. 2012) (quoting Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)) (internal quotation marks omitted). However, "the doctrine of equitable tolling is used sparingly by federal courts." Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010) (citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000)). The Sixth Circuit has outlined five non-exhaustive factors for the court to consider in deciding whether equitable tolling is appropriate, including: "1)

lack of notice of requirement to file suit; 2) lack of constructive
knowledge of the filing requirement; 3) diligence in pursuing one's
rights; 4) absence of prejudice to the defendants; and 5)
plaintiff's reasonableness in remaining ignorant of the particular
legal requirement." Cheatom v. Quicken Loans, 587 F. App'x 276,
281 (6th Cir. 2014) (citing Truitt v. Cty. of Wayne, 148 F.3d 644,
648 (6th Cir. 1998)).

Equitable tolling is not appropriate in this case. Harris was
clearly aware of her fraudulent misrepresentation claim because
she attempted to bring it in 2018. See Harris I, 2019 WL 2319529,
at *1. That claim was dismissed for lack of standing because Harris
had previously declared bankruptcy. Harris II, 2020 WL 7231501, at
*3. When Harris filed for bankruptcy, her estate became the owner
of all her property, including tort claims that accrued before she
filed her bankruptcy petition. Auday v. Wet Seal Retail, Inc, 698
F.3d 902, 904 (6th Cir. 2012). Although Harris had no standing to
bring the claim alone, she was not without remedy. The Chapter 7
trustee in Harris's case could have substituted themselves as the
proper plaintiff within 120 days of Harris's complaint being filed.
Id. Additionally, the trustee could have abandoned the claim. Id.
at 905. Although Harris's power to bring the claim was limited by
her decision to declare bankruptcy, the declaration of bankruptcy
is not a circumstance outside of the litigant's control. See

Plummer, 463 F. App'x at 504. Therefore, the doctrine of equitable tolling does not apply.

Harris also argues generally that the continuing violations doctrine tolls the statute of limitations. (ECF No. 34 at 2.) In general, the continuing violations doctrine is limited to employment discrimination cases. Thomas v. Tennessee, 451 F. Supp.3d 849, 861 (W.D. Tenn. 2020)(citing Sharpe v. Cureton, 319 F.3d 259, 267 (6th Cir. 2003)("This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions"). The doctrine may operate to toll a statute of limitations "where the plaintiff can show a longstanding and demonstrable policy of discrimination." Claybrooks v. Primus Auto. Fin. Servs., Inc., 363 F. Supp. 2d 969, 980 (M.D. Tenn. 2005) (quoting Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003)). To invoke this doctrine, a plaintiff must show not only (1) "a longstanding, overarching policy of discrimination," but also (2) "a specific, allegedly discriminatory act against her within the relevant limitations period." Claybrooks, 363 F. Supp. 2d at 982.[6] This is not a Title VII case, and the court can find no authority that would extend

---

[6]The only claims that specifically address discriminatory acts are Harris's civil rights claims, which are barred by _res judicata_. See supra Section II.B.

the doctrine to a case such as this one. Because neither equitable tolling nor the continuing violations doctrine apply, the undersigned finds that Harris's fraudulent misrepresentation claim is time-barred.

Second, the claim should be dismissed for failure to state a claim. As stated in Hodge, a plaintiff claiming fraudulent misrepresentation must show: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation. 382 S.W.3d at 342 (citing Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008); 8 Tennessee Practice: Tennessee Pattern Jury Instructions – Civil § 8.36, at 357 (11th ed. 2011)). A fraud claim must meet the heightened pleading standard set forth by Federal Rule of Civil Procedure 9. Power & Tel. Supply Co. v. SunTrust Banks, Inc., 447 F.3d 923, 931 (6th Cir. 2006). A claim for fraud must be stated

with particularity, and "the plaintiff must, at a minimum, allege the time, place, and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." Id. (citing Fed. R. Civ. P. 9(b)); see also Coffey v. Foamex, L.P., 2 F.3d 157, 161-62 (6th Cir. 1993). The purpose of these requirements is to allow a court to dispose of abusive litigation filed as a fishing expedition, to protect defendants from unsupported attacks on their reputation, and to ensure the defendant has notice of the specific conduct the plaintiff charges as fraud in order to allow them to formulate a defense. United States ex rel. Marlar v. BWXT Y-12, LLC, 525 F.3d 439, 444 (6th Cir. 2008). A court must consider the particularity requirement of Rule 9(b) alongside the "policy of simplicity in pleading" found in Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim" and "simple, concise, and direct" allegations. Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988). The requirements of Rule 9(b) are met where the defendant has fair notice of the charges against them as long as they amount to more than mere assertions and unsupported conclusions. In re Reciprocal of America (ROA) Sales Litig., No. 04-2078, 2007 WL 2900286, at *6 (W.D. Tenn. Sept. 28, 2007).

       "The essence of fraud is deception." Deal v. Tatum, No. M2015-

01078-COA-R3-CV, 2016 WL 373265, at *7 (Tenn. Ct. App. Jan. 29, 2016)(citing Lopez v. Taylor, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005)). "In its most general sense, fraud is a trick or artifice or other use of false information that induces a person to act in a way that he or she would not otherwise have acted." Id. "Fraud occurs when a person intentionally misrepresents a material fact or intentionally produces a false impression in order to mislead another or to obtain an unfair advantage." Id. (citing Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 66 (Tenn. 2001).

Here, Harris's complaint fails to allege a claim for fraud with the requisite particularity. The complaint alleges that in December of 2015, an agent of Wells Fargo "stated that the only way she would stop the foreclosure sale was if [Harris] would probate [her late husband's] will and receive a testamentary letter at which time they would modify the loan." (ECF No. 1 at 11.) Harris was informed by letter on March 14, 2018, that she could not assume the mortgage. (Id. at 21.) Harris claims the representative's statement was an intentional misrepresentation because "it is absolutely inconceivable that [Wells Fargo] did not know the mortgage loan was not assumable before its March 14, 2018 letter . . . ." (Id. at 21.)

The complaint contains no particular allegations plausibly alleging that this representative acted with knowledge of falsity

of the representations about the mortgage or with the intent to deceive Harris. In fact, Harris acknowledges that she has not met the heightened pleading standard of Rule 9 by failing to plead any intentional or knowing false representation by Wells Fargo: "[t]he new element of knowledge may not had [sic] been addressed in Plaintiff's affirmative facts. However, knowledge has to be implied by the bare nature of their business and the environment that this particular Defendant operates." (Id.)

Moreover, Harris appears to acknowledge that she has failed to plead even reckless conduct by Wells Fargo. She states: "[m]aybe [i]f it is the truth [that Wells Fargo did not know that the mortgage loan was not assumable] . . . had the defendant answered the many questions plaintiff has asked through her association with it, it would have come to that conclusion much earlier sparring [sic] plaintiff a lot of grief, needed resources[,] and she would not be 60 coming out of a bankruptcy." (Id. at 21-22.) At most, Harris pleads negligent conduct by a Wells Fargo representative in failing to recognize that their alleged promise was or may have been false. She pleads no facts to suggest that the conduct by Wells Fargo rises to the level of reckless, knowing, or intentional false representations.

Harris's complaint contains only legal labels and a perfunctory recitation of some elements of the claim. Therefore,

Harris has not pled her claim for fraudulent misrepresentation
with sufficient particularity. Accordingly, it is recommended that
Harris's claim for fraudulent misrepresentation be dismissed on
the grounds of being time-barred and for failing to state a claim
upon which relief may be granted.

        3.    Tennessee Consumer Protection Act

        The TCPA prohibits any "unfair or deceptive acts or practices
affecting the conduct of any trade or commerce." Tenn. Code Ann.
§ 47-18-104. The purpose of the TCPA is "to protect consumers and
legitimate business enterprises from those who engage in unfair or
deceptive acts and practices." Stooksbury v. Am. Nat'l Prop. &
Cas. Co., 126 S.W.3d 505, 520 (Tenn. Ct. App. 2003). Fifty-two
specific "unfair or deceptive acts or practices" are listed
therein. Tenn. Code Ann. at § 47-18-104(b)(1)-(52). Harris does
not point to any specific section of the TCPA as being violated,
but identifies the following acts as constituting violations of
the TCPA: 1) refusing to answer written questions about the basis
for denial or closing of five separate HAMP applications; 2)
failing to answer question as to why Harris was not acknowledged
as mortgagor's heir; 3) coercing her into an expensive court
proceeding; 4) refusing to tell her what she was required to do to
save her home; 5) ignoring a question regarding the justification
for requiring her to have a testamentary letter to become the

responsible party for the remaining debt; 6) refusing to modify
the debt after she presented a testamentary letter; 7) refusing to
answer questions about the equity in her home; and 8) claiming the
mortgage is not assumable without explanation. (ECF No. 1 at 20-
21.) Wells Fargo argues that Harris's TCPA claim is time-barred
and that the TCPA does not apply to loan modifications. (ECF No.
29 at 16-17.) Harris argues generally that the doctrine of
equitable tolling and the continuing violations doctrine apply,
but she does not address the argument that the TCPA does not apply
to loan modifications. (ECF No. 34 at 2.)

> The TCPA's statute of limitations provides:
>
> Any action commenced pursuant to § 47-18-109 shall be
> brought within one (1) year from a person's discovery of
> the unlawful act or practice, but in no event shall an
> action under § 47-18-109 be brought more than five (5)
> years after the date of the consumer transaction giving
> rise to the claim for relief.

Tenn. Code Ann. § 47-18-110.

Wells Fargo argues that Harris's TCPA claim is time-barred
because "Plaintiff acknowledges being advised in February and
March of 2018 that she could not assume or modify the Mortgage, so
her TCPA claim, filed on August 31, [2021], is beyond the one-year
limitations period."[7] (ECF No. 29 at 16-17.) Harris asserts that

---

[7]Although Wells Fargo states in their motion that Harris's TCPA
claim was filed on August 31, 2018, this is obviously a

the earliest her claim could have accrued was in July 2018, after
the bankruptcy court granted her motion to lift the bankruptcy
stay. (ECF No. 35 at 1.) In their reply, Wells Fargo states that
Harris's argument that her claim accrued in July 2018 is contrary
to the findings in Harris I, which established that her TCPA claim
arose prior to her bankruptcy filing in January 2017. (ECF No. 36
at 9.) The undersigned finds Harris's TCPA claim is time barred.
Even if the court were to accept July 2018 as the accrual date,
Harris's August 2021 complaint was filed more than one year later.
(ECF No. 35 at 1.)

As with her fraudulent misrepresentation claim, the doctrine
of equitable tolling does not apply. Harris was clearly aware of
her TCPA claim, see Harris I, 2019 WL 2319529 at *1, and although
Harris had no standing to bring the claim, the trustee could have
brought it or could have abandoned the claim. Auday, 698 F.3d at
905. Likewise, the continuing violations doctrine does not apply.
See Thomas, 451 F. Supp. 3d at 861; Claybrooks, 363 F. Supp. 2d at
982. Therefore, the undersigned finds Harris's TCPA claim is time-
barred.

Additionally, Harris's complaint fails to state a claim on
which relief could be granted. Tennessee courts have consistently

---

typographical error. (ECF No. 29 at 17.)

held that a lender's actions for foreclosure and debt-collection,
even when pursuing loan modification, are not covered under the
TCPA. See Pursell v. First Am. Nat'l Bank, 937 S.W.2d 838, 841-42
(Tenn. 1996)(holding that a lender's repossession of collateral
securing a defaulted loan is not actionable under the TCPA); see
also Pugh v. Bank of Am., No. 13-2020, 2013 WL 3349649, at *7 (W.D.
Tenn. July 2, 2013) (holding that where "the gravamen of
Plaintiffs' allegation is that foreclosing the Property would be
improper because of representations made during a series of events
that led to denial of Plaintiffs' request for a loan modification
. . . . [t]hese events occurred in the context of a dispute that
is effectively a 'dispute over repossession of the collateral
securing [a] loan," and therefore the TCPA does not apply)
(citations omitted); Peoples v. Bank of Am., No. 11-2863-STA, 2012
WL 601777, at *8 (W.D. Tenn. Feb. 22, 2012) (holding that lender's
negotiation of a mortgage modification while simultaneously
pursuing foreclosure was not actionable under the TCPA); Vaughter
v. BAC Home Loans Servicing, LP, No. 3:11-cv-00776, 2012 WL 162398,
at *5-6 (M.D. Tenn. Jan. 19, 2012) (deciding that the TCPA did not
apply to defendant's allegedly deceptive acts during loan
modification negotiations and home foreclosure); Hunter v.
Washington Mut. Bank, No. 2:08-cv-069, 2008 WL 4206604, at *5-6
(E.D. Tenn. Sept. 10, 2008) (dismissing TCPA claim based on bank's

attempts to collect from a delinquent borrower). Harris's
complaint makes clear that this dispute arises from a mortgage
transaction and the assumption and modification of said mortgage.
(ECF No. 1.) The essence of Harris's allegations is that
foreclosing on the property is improper because Wells Fargo made
representations about her ability to modify the mortgage, which
Wells Fargo ultimately did not allow her to do despite those
representations. These events occurred in the context of a mortgage
dispute that is effectively a "dispute over repossession of the
collateral securing [a] loan." Pursell, 937 S.W.2d at 842. "[W]hen
a debtor defaults on a mortgage payment, and the mortgage holder
forecloses upon the collateral that secured the loan (in this case,
the Property), the TCPA does not apply." Launius v. Wells Fargo
Bank, N.A., No. 3:09-cv-501, 2010 WL 3429666, at *6 (E.D. Tenn.
Aug. 27, 2010).

Nor do Harris's allegations relating to the terms of Wells
Fargo's loan modification offers state a claim under the TCPA. The
TCPA expressly excludes four areas from its coverage, one of which
deals with credit transactions. The TCPA states in relevant part:

(a)   The provisions of this part shall not apply to:

(3)   Credit terms of a transaction which may be
otherwise subject to the provisions of this
part, except insofar as the Tennessee Equal
Consumer Credit Act of 1974, compiled in part
8 of this chapter may be applicable.

- 34 -

Tenn. Code Ann. § 47-18-111(a)(3). Because Wells Fargo's loan modification offers relate to the terms of its extension of credit to Harris, they fall outside the reach of the TCPA. Launius, 2010 WL 3429666, at *6. Therefore, the TCPA does not apply to Harris's claim that Wells Fargo engaged in unfair or deceptive practices. Accordingly, it is recommended that Harris's claim for violations of the TCPA be dismissed because they are time-barred and for failure to state a claim upon which relief may be granted.

4.    Intentional Infliction of Emotional Distress

In the section of her complaint that describes her IIED claim, Harris merely recites the elements of the claim but does not connect those elements to her allegations. (ECF No. 1 at 16.) Wells Fargo argues that Harris's IIED claim is time-barred and that the complaint fails to state a claim for relief. (ECF No. 29 at 11.) Harris argues generally that the doctrine of equitable tolling and the continuing violations doctrine apply, but she does not address the argument that she failed to state an IIED claim. (ECF No. 34 at 2.)

A one-year statute of limitations is applicable to IIED claims. Olivier v. City of Clarksville, No. M2016-02473-COA-R3-CV, 2017 WL 3535016, at *5 (Tenn. Ct. App. Aug. 17, 2017)(citing Leach v. Taylor, 124 S.W.3d 87, 91 (Tenn. 2004)). A cause of action accrues "when the injury on which the action is

based is known or should have been discovered by a reasonable person." Id. (citing Gray v. 26th Judicial Drug Task Force, No. 02A01-9609-CV-00218, 1997 WL 379141, at *2 (Tenn. Ct. App. Jul. 8, 1997)). Although Harris does not identify any specific date or event when such distress was caused, the essence of Harris's complaint centers around Wells Fargo's denial of Harris's request to assume her late-husband's mortgage. (ECF No. 1.) Harris was informed by letter on March 14, 2018, that she could not assume the mortgage. (Id. at 21.) Harris filed her complaint on August 31, 2021. (Id.) If March 14, 2018, is considered the date of the accrual of Harris's IIED claim, it is indeed time-barred.

In her complaint, Harris also claims that her late husband's estate was closed May 12, 2020, and that Wells Fargo "continue[d] to mail notices for Plaintiff's home in the name of the Estate of Jimmy D. Harris." (Id. at 13.) Although it is unclear on the face of the complaint whether this alleged conduct is associated with Harris's IIED claim, even giving Harris the benefit of the doubt, the undersigned submits that Harris fails to state claim for which relief can be granted. In order to state a claim for IIED under Tennessee law, a plaintiff must establish the following elements: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in

- 36 -

serious mental injury to the plaintiff." <u>Lourcey v. Estate of Scarlett</u>, 146 S.W.3d 48, 51 (Tenn. 2004)(citing <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997)); <u>accord</u> <u>DeSoto v. Bd. of Parks & Recreation</u>, 64 F. Supp. 3d 1070, 1095 (M.D. Tenn. 2014).

Harris has not alleged any conduct so outrageous and extreme so as to be rendered intolerable by civilized society. Courts considering IIED claims in the context of a foreclosure sale have found that facts similar to those alleged here do not rise to the level of outrageous conduct. See <u>Sandlin v. Citibank, N.A.</u>, No. 2:15-cv-2768-JTF-dkv, 2016 WL 4276287, at *6 (W.D. Tenn. Jul. 21, 2016), <u>report and recommendation adopted</u>, No. 2:15-cv-02768-JTF-dkv, 2016 WL 4292318 (W.D. Tenn. Aug. 15, 2016) (finding that the plaintiff failed to allege any acts by the defendants rising to the level of outrageous conduct where he claimed that the defendants wrongly instituted foreclosure proceedings against him); <u>Johnson v. Broker Sols., Inc.</u>, No. 3:15-cv-00047, 2015 WL 4469276, at *4 (M.D. Tenn. July 22, 2015), <u>report and recommendation adopted</u>, No. 3:15-cv-0047, 2015 WL 4758102 (M.D. Tenn. Aug. 11, 2015)(holding that the issuance of a Notice of Default did not constitute outrageous behavior even though plaintiff claimed that he did not default and suffered "the constant emotional nightmare of losing the Property"); <u>In re Jenkins</u>, 488 B.R. 601, 617 (Bankr. E.D. Tenn. 2013)(holding that

sending foreclosure notices does not rise to the level of outrageous conduct even if such notices constituted a breach of the mortgage contract or a negligent or inadvertent act)(citations omitted); <u>Launius</u>, 2010 WL 3429666, at *2, 5 (holding that conducting foreclosure sale while plaintiff attempted to modify the loan did not constitute outrageous conduct).

Because Harris has not alleged outrageous conduct by Wells Fargo, as a matter of law, she has not made allegations sufficient to support an IIED claim. Accordingly, it is recommended that Harris's claim be dismissed for failure to state a claim upon which relief may be granted.

    5.   <u>"Misuse, Abuse, and Malicious Prosecution"</u>

As with her IIED claim, Harris merely recites the elements of a malicious prosecution claim and does not connect those elements to her allegations. (ECF No. 1 at 16.) Wells Fargo argues that this claim must be dismissed because "Wells Fargo has not sued or used process against plaintiff." (ECF No. 29 at 13.)

"In Tennessee there are two tort actions which may be brought to obtain redress for the alleged misuse of legal process by another: malicious prosecution and abuse of process." <u>Bell ex rel.</u> <u>Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.</u>, 986 S.W.2d 550, 555 (Tenn. 1999)(citations omitted). To establish a claim for malicious prosecution in Tennessee, Harris must show

- 38 -

that Wells Fargo maliciously brought a prior suit against her
without probable cause and that the prior suit was terminated in
favor of Harris. Id. (citing to Roberts v. Fed. Express Corp., 842
S.W.2d 246, 248 (Tenn. 1992)). Harris has not alleged that Wells
Fargo brought a prior suit against her, or any other person, in
relation to Harris's late husband's mortgage. Therefore, they
cannot be held liable to Harris for malicious prosecution.

To bring a claim of abuse of process, a plaintiff must show:
(1) an ulterior motive; and (2) "an act in the use of process other
than . . . would be proper in the regular prosecution of the
charge." Priest v. Union Agency, 125 S.W.2d 142, 143 (Tenn. 1939).
Filing an action for an improper, ulterior motive is not sufficient
to give rise to a claim for abuse of process. Bell ex rel. Snyder,
986 S.W.2d at 556. Abuse of process requires "a subsequent improper
act in the use of process after the initiation of a
lawsuit." Id. at 555 (citation omitted). Here, Harris has not
alleged that there was an improper act in the use of process.
Harris has not included allegations sufficient to support either
a claim of malicious prosecution or abuse of process. Thus, the
undersigned recommends that the Motion to Dismiss as to these
claims be granted for failure to state a claim upon which relief
may be granted.

### III. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

May 3, 2022
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**